IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN WILLIAM BUTNER,

        Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

No. 6:16-cv-01737-HZ

OPINION & ORDER

Katherine L. Eitenmiller
Mark A. Manning
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401

    Attorneys for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-1011

1 - OPINION & ORDER

Sarah Moum
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Brian Butner brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on January 25, 2013, alleging an onset date of May 12, 2012. Tr. 149-52. His application was denied initially and on reconsideration. Tr. 101-004 (Initial); Tr. 106-08 (Reconsideration). On December 1, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 49-73. On February 11, 2015, the ALJ found Plaintiff not disabled. Tr. 18-42. The Appeals Council denied review. Tr. 1-7.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having herniated discs, a thyroid condition, and arthritis of the back. Tr. 167. At the time of the hearing, he was thirty-nine years old. Tr. 52. He is a high school graduate and has past relevant work experience as a union ironworker. Tr. 53.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 23. Next, at step two, the ALJ determined that Plaintiff has the following severe impairments: failed cervical fusion with pseudoarthrodesis at C5-6 and left upper extremity radicular pain; degenerative disc disease of the thoracic spine; status post arthroscopic repair of a right hip labral tear; and obesity. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or equal, either singly or in combination, a listed impairment. Tr. 26.

At step four, the ALJ concluded that Plaintiff has the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). *Id.* She included the following limitations: (1) Plaintiff can lift ten pounds occasionally and less than ten pounds frequently; (2) he can sit, stand, and walk each six hours in an eight-hour day, for a combined total of eight hours of activity, but he requires the option to change position from seated to standing three times an hour without interrupting essential tasks; (3) he can never reach overhead or crawl, and he can never climb ladders, ropes, or scaffolds; (4) he should not be exposed to hazards such as unprotected heights or large moving equipment; (5) he can occasionally push and pull with the upper extremities; (6) he can occasionally twist and turn his upper body; (7) he can occasionally bend, twist, and turn his cervical spine; (8) he should not perform tasks that require holding the

neck in a fixed position for prolonged periods; and (9) due to the impact of pain on concentration, persistence, and pace, he can understand, remember, and carry out only simple instructions in a setting with no strict production rate. *Id.*

With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 36. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as order clerk, charge account clerk, and call out operator. Tr. 37. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 38.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that the ALJ erred in rejecting the opinions of an examining and

treating physician and in discrediting Plaintiff's symptom testimony.

I.  Plaintiff's Credibility

The ALJ is responsible for determining credibility.  *Vasquez*, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain.  *Id.*; *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

Applying the correct two-step analysis, the ALJ found that Plaintiff's testimony was not "fully corroborate[d]" by the treatment record and was inconsistent with contemporaneous reports of actual functioning. Tr. 28. She also found that Plaintiff's statements to his physicians varied from his testimony at the hearing. Tr. 32. She further indicated that he failed to follow treatment recommendations. Tr. 33.

Plaintiff argues that lack of support by the objective medical evidence is not a clear and convincing reason to find Plaintiff's testimony less than credible. Plaintiff is correct that Ninth

Circuit cases hold that once the claimant produces medical evidence of an underlying impairment, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks omitted). However, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony as long as the ALJ does not reject such testimony *solely* because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 404.1529(c)(2); *see also Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (emphasis added). Plaintiff does not dispute the accuracy of the ALJ's recitation of the medical evidence. Instead, he argues only that inconsistency with the medical record is not a valid reason to reject his symptom testimony. But, as long as it is not the sole reason, it is a relevant factor to consider in assessing Plaintiff's credibility. Thus, if the ALJ provided other clear and convincing reasons supported by substantial evidence in the record, the ALJ did not err in finding that Plaintiff's symptom testimony was inconsistent with the treatment record and in using that inconsistency as a basis to discredit Plaintiff's testimony.

As for the other reasons, the ALJ noted that Plaintiff's statements to the agency were not consistent with the record. For example, the ALJ noted that Plaintiff told the agency that he had treated with a California orthopedist and the UCLA Medical Center as recently in 2012. Tr. 32-33, 170, 172. But, records showed that he had not been seen by that orthopedist since 2010. Tr. 234. And the UCLA treatment ended in 2006. Tr. 235. The ALJ also noted the discrepancy

between Plaintiff's hearing testimony that he had begun taking Gabapentin six months earlier, meaning in approximately June 2014, but he failed to identify the medication in his report submitted just two months before the hearing. Tr. 55, 228. Additionally, records showed he was initially prescribed the medication in November 2012 but he was not regularly taking it. Tr. 342, 544.

The ALJ also noted that Plaintiff reported to the agency that he was taking Xanax for anxiety and as a sleep aid. Tr. 33 (citing Tr. 170, 181, 214); *see also* Tr. 228 (Oct. 2014 report of medications including Xanax). But, a urinalysis from September 2014 revealed no Xanax and Plaintiff reported to his provider in November 2014 that he avoids benzodiazepines, resulting in discontinuation of his Xanax prescription. Tr. 542, 548-49. The ALJ also noted Plaintiff's inconsistent reports regarding a car accident in 2013. Tr. 33. He initially reported that he was sideswiped while parked. Tr. 425-27; *see also* Tr. 430 (noting a description of the incident as a "driver side impact"). However, Plaintiff changed his report in April 2014 when being seen by a treating back specialist to state that he was rear-ended by a drunk driver going seventy miles per hour. Tr. 538. Finally, in terms of his inconsistent statements, the ALJ noted that although Plaintiff told the agency that his roommates carried all the wood necessary to heat their home, Tr. 57, he reported to his provider in March 2013 that he was lifting wood. Tr. 336.

Next, the ALJ discussed Plaintiff's activities, finding them not as limited as one would expect given his testimony of disabling symptoms. Tr. 32. The ALJ noted that despite alleging that constant pain prevented him from working, that he experiences twenty-four bad days per month, and that he spends two hours per day lying down in bed due to pain, Tr. 27, he nonetheless was independent in self-care, drove a car, and regularly traveled to another state to

visit his children and attend appointments. Tr. 33 (noting these activities as examples). Additionally, Plaintiff cares for his teenaged children in the summer and prepares meals daily. Tr. 67, 190.

Finally, the ALJ discussed Plaintiff's failure to follow treatment recommendations. Tr. 33. She noted that he was prescribed Xanax but he did not take it. Tr. 33. He was told to participate in exercise but he testified he only occasionally stretched and did no other exercise. *Id.* And, she found that at least one physician noted that he was noncompliant with his medications. Tr. 33 (citing Tr. 249 (referring to being noncompliant re: hypothyroidism)); *see also* Tr. 29 (ALJ noted that physician told Plaintiff to continue wearing a neck brace and perform isometric exercise in February 2013 but by March he was "noncompliant" because he was not wearing his brace) (citing Tr. 336-38).

Plaintiff argues that the inconsistencies cited by the ALJ do not contradict his testimony. Plaintiff notes that when he was initially treated after his 2013 car accident, he would not have known whether the other driver was intoxicated. Presumably, Plaintiff's point is that his later statement about being hit by a drunk driver is not inconsistent with an earlier report that failed to mention that fact because initially, Plaintiff would not have possessed knowledge about the other driver. Plaintiff also notes that at the time of his initial examination after the accident, he "was not even sure whether he had been wearing his seatbelt[.]" Pl.'s Brief 11, ECF 15. Presumably, his point about the seatbelt is that when he was seen initially, he was rattled by the accident and could not recall specific details. Putting aside that this latter suggestion is contradicted by the record of that examination noting his mental status as alert, Tr. 427, neither of Plaintiff's arguments undermines the ALJ's interpretation. The ALJ's point is that reporting that his car was

sideswiped is significantly different than a report that he was rear-ended by a car going seventy miles per hour. The ALJ reasonably interpreted the latter report as an embellishment of the initial report which lessened the credibility of his limitation allegations.

Plaintiff also states that after he reported to his treatment provider that he had been lifting wood, he was advised to decrease his activity and wear a neck brace. Tr. 336. It is unclear how the physician's response to Plaintiff's report of lifting wood helps Plaintiff. It does nothing to undermine the ALJ's observation that Plaintiff testified that his roommates lifted all the wood yet his chart notes showed that he did it himself. Even if his physician noted that he was overdoing the activity, Plaintiff obviously felt well enough to do it within the first couple of months after his surgery, undermining his assertion that he suffered from disabling pain.

Plaintiff next argues that in assessing his daily activities and finding them consistent with sedentary work, the ALJ failed to mention Plaintiff's testimony that he needs to lie down every day. The ALJ concluded that Plaintiff could perform sedentary work. That conclusion is based on her finding that Plaintiff's daily activities are inconsistent with Plaintiff's testimony of disabling symptoms and limitations. One of the disabling symptoms and limitations is Plaintiff's testimony that he has to lie down for hours each day. There was no reason for the ALJ to cite to this testimony *in support* of her finding. Rather, this is some of the testimony the ALJ rejected because of Plaintiff's inconsistent daily activities. Moreover, the ALJ's finding that Plaintiff's allegations of disabling symptoms were undermined by activities such as long-distance travel to California, regular meal preparation, and driving, was not unreasonable.

Finally, Plaintiff challenges the ALJ's findings that Plaintiff failed to comply with treatment recommendations. He argues that the ALJ cited no evidence that doctors

11 - OPINION & ORDER

recommended Plaintiff exercise. Furthermore, he argues that there are no treatment notes showing that Plaintiff was noncompliant with prescribed medications such as Xanax nor is there any indication that his discontinuation of benzodiazepines was against medical advice.

The record shows that Plaintiff was instructed to do isometric exercises and wear a neck brace after surgery. Tr. 337. He testified he did no exercise other than stretching "from time to time[.]. Tr. 57. He did not wear the brace as instructed. Tr. 336. The ALJ's finding that he failed to follow physician recommendations is supported in the record and reasonably interpreted as lessening the credibility of his limitation allegations. As to the Xanax, the ALJ noted that although Plaintiff reported taking Xanax, a September 2014 urinalysis showed that he was not taking it. Tr. 33. This was one of three reasons she used to find that he did not follow treating providers' recommendations. Tr.33. Plaintiff is correct that there are no treating provider notes expressly deeming Plaintiff as "noncompliant" for failing to take Xanax.[1] There is also nothing in the record to suggest that his desire to avoid taking this type of medication was against medical advice. However, the ALJ was not incorrect in noting that the medication had been prescribed for specific reasons and Plaintiff had voluntarily discontinued taking it. That leads to a reasonable conclusion that his symptoms may not "have been as serious as alleged[.]" Tr. 33. Moreover, even if the ALJ made an unsupported finding about Xanax, her finding that he failed to follow treatment recommendations is otherwise supported.

The ALJ cited instances of inconsistent reporting, activities which were inconsistent with

---

[1] However, contrary to Plaintiff's statement that there is no evidence in the record showing that he was ever noncompliant with a prescription medication, the chart note from December 10, 2010 states that he stopped taking synthroid, a prescription medication, and thus, notes he was noncompliant with his treatment for hypothyroidism. Tr. 249.

12 - OPINION & ORDER

alleged disabling symptoms, and failure to follow treatment recommendations, all of which are supported by the record. Because they are supported and her interpretations of the record are reasonable, these are clear and convincing reasons to reject Plaintiff's subjective symptom testimony. Accordingly, the ALJ also appropriately considered that Plaintiff's testimony was not fully supported by the objective medical evidence. Therefore, the ALJ did not err in her credibility determination.

II. Medical Opinions

Plaintiff contends that the ALJ erred in failing to credit all of the limitations assessed by examining physician Dr. Raymond Nolan, M.D., Ph.D., and in failing to give any weight to the opinion of treating physician Dr. Robert Gerber, M.D. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of a practitioner who does not actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

/ / /

A. Dr. Nolan

Dr. Nolan examined Plaintiff in October 2013. Tr. 419-20. He assessed the following functional limitations: (1) avoid bending, twisting, and turning of the cervical spine; (2) limit bending and twisting of the lumbar spine to an occasional basis; and (3) limit pushing and pulling with upper extremities to an infrequent basis and limit lifting and carrying to ten pounds frequently and twenty pounds occasionally. Tr. 420. Additionally, Dr. Nolan opined that Plaintiff can sit for six hours and stand and/or walk at least four hours in an eight-hour day with appropriate breaks as needed for comfort, and that he has adequate communication skills. *Id.*

The ALJ discussed Dr. Nolan's examination findings and functional limitations. Tr. 30, 34. The ALJ gave great weight to Dr. Nolan's functional limitations except for his opinions regarding (1) avoiding bending, twisting, and turning his cervical spine; (2) Plaintiff's ability to carry twenty pounds occasionally; and (3) his ability to stand or walk for four hours. Tr. 34. As to the ability carry twenty pounds, the ALJ's RFC actually imposes a more restrictive limitation to lifting ten pounds occasionally. Tr. 26.[2] As to the ability to bend, twist, and turn his cervical spine, the ALJ's RFC limited Plaintiff to occasionally bending, twisting, and turning his cervical spine. *Id.* And, as to his ability to stand or walk, the ALJ's RFC restricted Plaintiff to sitting, standing, and walking each six hours in an eight-hour day. *Id.*

The ALJ found the limitations assessed by Dr. Nolan regarding the cervical spine, lifting, and standing/walking, as "not consistent with or supported by the evidence of record." Tr. 34. As a result, she gave them "little weight." *Id.* Plaintiff argues that the ALJ provided "no

---

[2] Plaintiff does not appear to challenge the ALJ's more restrictive lifting limitation as error, mentioning only the ALJ's discounting of Dr. Nolan's opinion regarding sitting and bending, twisting, and turning of the cervical spine. Pl.'s Brief 8.

14 - OPINION & ORDER

reasoning" for discounting the opinion, resulting in legal error. Pl.'s Brief 8.

Plaintiff is mistaken. The ALJ expressly stated that these particular limitations assessed by Dr. Nolan were inconsistent with the record. This is a legitimate reason to reject the opinion of an examining physician. *E.g.*, *Tommasetti*, 533 F.3d at 1041 (affirming ALJ's evaluation of a treating physician opinion which was inconsistent with physician's medical records); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of physician opinion which was contradicted by other statements and assessments of the claimant's medical condition); *Hume v. Berryhill*, No. 3:16-CV-01766-SB, 2017 WL 3978392, at *8 (D. Or. Sept. 11, 2017) ("inconsistency between medical opinions is a specific and legitimate reason to give less than full weight to a treating physician's opinion.").

At the point where she discussed the weight assigned to Dr. Nolan's limitations, the ALJ did not expressly cite to the evidence she found to be inconsistent with Dr. Nolan's stand/walk and cervical neck limitations. Tr. 34. But, she had just concluded almost six full pages reciting and discussing the medical evidence in detail. This was sufficient. *E.g.*, *Perkins v. Colvin*, 45 F. Supp. 3d 1137, 1149 (D. Ariz. 2014) (finding ALJ's discussion of inconsistent treatment notes that appeared earlier in the ALJ's decision sufficient to support rejection of examining physician's opinion); *Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1159-60 (D. Or. 2011) (finding ALJ's thorough discussion and evaluation of the medical evidence later in the decision was satisfactory to support finding at step three).

The ALJ noted that in 2013, the year in which Dr. Nolan evaluated Plaintiff, imaging studies showed mild degenerative changes at C4-8 with intact cervical fusion hardware. Tr. 29 (citing Tr. 238, 239). Although there was, as the ALJ noted, some heterotrophic ossification at

C4-5 and C5-6 resulting in abutment of the spinal cord, there was no associated abnormal cord signal. Tr. 238, 239. Then, in October 2013, a repeat CT scan showed the anterior fusion at C4 through C6 with intact hardware and interbody disc material. Tr. 30 (citing Tr. 460-62). Spinal alignment was normal. Tr. 461. Preservation of vertebral body heights and disc space heights were noted. *Id.* From C2-C4, there were no significant disc bulges, thecal sac deformities, or stenosis present. Tr. 462. At C4-5, anterior hardware was noted with fusion along with a small central osteophyte which contributed to mild central canal stenosis without lateral recess or neural foraminal stenosis. *Id.* Similarly, at C5-6, anterior fusion and disc graft was noted along with a posterior osteophyte but which contributed to only mild central canal stenosis without lateral recess or neural foraminal stenosis. *Id.* At C6-7, there was a small osteophyte but again, this contributed to only mild central canal stenosis. *Id.*

The ALJ also noted the opinions of two non-examining physicians who found that due to his neck position requirements, Plaintiff was limited in overhead reaching but who did not restrict Plaintiff in other movements of his neck. Tr. 33-34 (discussing Tr. 76-99). The ALJ noted that these physicians were experts in the field of physical disability adjudication. Tr. 34 Although she rejected other limitations assessed by these practitioners because the record showed that Plaintiff actually needed additional limitations, she otherwise gave their opinions great weight. *Id.*

The record shows that while Plaintiff had symptoms serious enough to require surgery in January 2013, his fusion was healing and while there was some ossification and presence of osteophytes, there was no abnormal spinal cord signal and the stenosis at C4-7 was described only as mild. Other evidence in the record shows that in the opinion of other physicians,

reaching limitations accommodated Plaintiff's postural neck requirements. Thus, the record supports the ALJ's adoption of an "occasional" limitation on bending, twisting, and turning of the cervical spine over Dr. Nolan's restriction to avoid all bending, twisting, and turning of the cervical spine. As to the standing/walking limitation, Dr. Nolan's own examination showed that Plaintiff was able to go from sitting to standing without difficulty and had a normal gait. Tr. 419. None of Plaintiff's medical providers to date had restricted his ability to walk or stand. Although he had hip and low back problems in 2012, *e.g.*, Tr. 365, 408, the record does not establish that a four-hour restriction on standing/walking was required. Thus, the ALJ did not err in rejecting these particular limitations by Dr. Nolan.

Alternatively, even if the ALJ erred as Plaintiff asserts, the error is harmless. Each of the jobs identified by the ALJ at step five involves sedentary work. Tr. 37 (identifying order clerk, charge account clerk, and call out operator, and identifying all as sedentary).[3] Sedentary work requires lifting no more than ten pounds frequently and twenty pounds occasionally, and only occasional standing and walking. 20 C.F.R. § 404.1567(a). Each of the three jobs identified by the ALJ expressly notes that "[s]edentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." 1991 WL 672186; 1991 WL 671794; 1991 WL 6711715. Based on their classification, the three jobs require only "brief" periods of walking or standing. "Brief" is inconsistent with walking and standing for more than four hours in an eight-hour day. Thus, any error by the ALJ in failing to limit Plaintiff to four hours of standing and/or

---

[3] The Dictionary of Occupational Titles (DOT) confirms that the jobs are categorized as sedentary. *See* DOT 209.567-014, *available at* 1991 WL 671794 (Order Clerk); DOT 205.367-014, *available at* 1991 WL 671715 (Charge Account Clerk); DOT 237.367-014, *available at* 1991 WL 672186 (Call-Out Operator).

walking is harmless because by identifying only sedentary jobs at step five, the ALJ effectively limited Plaintiff to no more than four hours of walking and standing in an eight-hour day.

As to Dr. Nolan's limitation on the bending, twisting, and turning of the cervical spine, the testimony of the vocational expert (VE) establishes that any error by omitting that limitation was harmless. The ALJ posed a hypothetical to the VE which was identical to the ALJ's RFC, except initially, the hypothetical did not include the limitation of a job that did not have a strict production pace. Tr. 70. In response, the VE testified that a person with those limitations could perform the same three jobs that the ALJ relied on at step five. *Id.* Next, the ALJ added the limitation regarding production pace. Tr. 71. That did not change the VE's opinion that the individual could still perform those three jobs. *Id.* Then, the ALJ asked whether the individual could still perform these same jobs if the restriction in the original hypothetical to occasional bending, twisting, and turning of the cervical spine were changed so that the individual could *never* bend, twist, or turn the cervical spine. Tr. 72. The VE responded: "I believe he could." *Id.* The VE's testimony establishes that under the ALJ's RFC, Plaintiff could still perform the three jobs identified at step five. Thus, any error in omitting Dr. Nolan's limitation from the RFC is harmless.

B. Dr. Gerber

In November 2014, Plaintiff was treating with Dr. Gerber. At that time, Dr. Gerber referred Plaintiff to Dr. Bert for further recommendations for his neck. Tr. 549. In his November 4, 2014 chart note, Dr. Gerber wrote: "It is anticipated that [Plaintiff] will improve through treatment with Dr. Bert, OR he will be declared disabled, OR both." *Id.* Plaintiff argues that the ALJ erred in failing to consider Dr. Gerber's opinion.

The ALJ noted that in October 2014, Dr. Gerber had denied a request to perform a medical evaluation of Plaintiff because Plaintiff had seen Dr. Gerber only "one time" at that point. Tr. 35 (citing Tr. 545). The ALJ does not mention Dr. Gerber's November 4, 2014 chart note.

The ALJ committed no error. First, this is not a medical "opinion" requiring discussion. Medical opinions are "statements . . . that reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R § 404.1527(a)(2). Dr. Gerber's single reference to Plaintiff being disabled does not constitute a medical opinion because it does not note Plaintiff's symptoms, diagnosis, etc., or assess what he can still do. Second, statements that a claimant is "disabled" are not a medical opinion but are instead opinions "reserved to the Commissioner because they are administrative findings that are dispositive of a case[.]" 20 C.F.R. § 404.1527(d)(1). "[D]isability is an administrative determination of how an impairment in relation to education, age, technological, and social factors affects the ability to engage in gainful activity." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The Commissioner, not a medical source, makes the determination on the ultimate question of disability. *Id.* Third, Dr. Gerber's opinion is, as Defendant points out, speculative and equivocal as he states only that it is "anticipated" that Plaintiff will be declared disabled. Anticipation of such a declaration is not an opinion requiring discussion by the ALJ. The ALJ did not err in failing to consider Dr. Gerber's statement.

/ / /

/ / /

19 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this  17  day of  November , 2017

*Marco A. Hernandez*
Marco A. Hernandez
United States District Judge